USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7-6-21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HYEGATE, LLC, DAP LLC, and ARAGATS
PERLITE OJSC,

                Petitioners,

- against -

ASHOT BOGHOSSIAN,

                Respondent

---

21-cv-1450 (JGK)

MEMORANDUM OPINION
AND ORDER

JOHN G. KOELTL, District Judge:

    Hyegate LLC, and its wholly owned subsidiaries DAP LLC and Aragats Perlite, OJSC, filed a petition to confirm an arbitration award (the "Petition") against the respondent, Ashot Boghossian, pursuant to the Federal Arbitration Act (the "FAA") 9 U.S.C. §§ 1 et seq. The arbitration award was issued by arbitrator Matthew E. Draper on December 11, 2020 (the "Award") and was rendered pursuant to an agreement into which the parties entered on September 6, 2017 (the "2017 Agreement"). The respondent has not opposed the Petition. For the reasons explained below, the Petition to confirm the Award is **GRANTED**.

I.

    The following undisputed facts are taken from the Petition, the Award, and the 2017 Agreement.

    The petitioners, Hyegate, LLC, and its wholly owned subsidiaries DAP LLC and Aragats Perlite OJSC, were claimants in

an arbitration against the respondent, Ashot Boghossian, that took place in New York City. Pet. ¶¶ 4-5, 7. The respondent, against whom the petitioners have received a Clerk's Certificate of Default, ECF No. 17, and who has not appeared in this proceeding, actively participated in the arbitration. Pet. ¶ 25.

The arbitration concerned an employment dispute arising under the 2017 Agreement. Award ¶ 1. The petitioners operated a perlite mine in Armenia. Award ¶¶ 3, 7. The parties entered into the 2017 Agreement on September 6, 2017 pursuant to which the respondent would manage the mine's operation and sales. Award ¶ 9. The 2017 Agreement contained an arbitration provision requiring the parties to arbitrate "[a]ny controversy or claim arising out of or relating to" the 2017 Agreement. Award ¶ 14; 2017 Agreement at 4. The arbitration was to be "administered by the American Arbitration Association in New York City in accordance with its Commercial Arbitration Rules, . . . and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof." Pet. ¶ 21; 2017 Agreement at 4. Matthew E. Draper was designated as the arbitrator pursuant to the Commercial Arbitration Rules of the American Arbitration Association. Pet. ¶ 23.

2

The underlying dispute arose because the petitioners terminated the respondent on November 9, 2018. Award ¶ 17. The petitioners alleged in the arbitration that the respondent failed to provide the petitioners with information concerning mine operations as required by the 2017 Agreement, and that the respondent purchased the wrong type of industrial dryer for the mine, resulting in a loss of $120,000. Award ¶¶ 16, 74. The petitioners further alleged several other violations of the 2017 Agreement resulting in substantial losses to the petitioners. Award ¶¶ 67, 79-80, 82-84, 86.

After being terminated by the petitioners, the respondent twice sued the petitioners in Armenia seeking additional compensation pursuant to the 2017 Agreement. Award ¶¶ 18-19. Aragats Perlite OJSC subsequently filed suit against the respondent in Armenia. Award ¶ 20. On January 3, 2020, Aragats Perlite OJSC withdrew from its Armenian lawsuit and the petitioners initiated the arbitration seeking damages, attorney's fees, interest, arbitration costs, punitive damages, and injunctive relief against the respondent. Award ¶¶ 20-21. In the arbitration proceedings, the respondent objected to arbitral jurisdiction, arguing that the underlying dispute concerned an employment dispute, not a commercial dispute, and that the petitioners waived their right to arbitration by suing the respondent in Armenia. Award ¶ 27. On July 21, 2020, after

considering the parties' arguments, the arbitrator ruled that New York law applied to the interpretation of the 2017 Agreement and the merits of the dispute, and that the FAA governed the procedure of the arbitration. Award ¶ 29. The arbitrator further found that the suit by Aragats Perlite OJSC in Armenia did not waive Hyegate LLC's right to arbitrate because Hyegate LLC was not a party to the Armenian litigation begun by Aragats Perlite OJSC and Aragats Perlite OJSC was not a party to the 2017 Agreement. Award ¶ 31. The arbitrator also found that the arbitration provision in the 2017 Agreement applied to the underlying dispute. Award ¶ 30.

After determining that the arbitration provision in the 2017 Agreement applied to the dispute in this case, the arbitrator enjoined the respondent from litigating against the petitioners in any court, including in Armenia, and held that the respondent must provide the petitioners with certain documents, that the respondent pay Hyegate, LLC $354,602.05 for the petitioners' various losses, that the respondent pay arbitration costs, and that the Award was in full satisfaction of the claims submitted. Award at p. 17.

The petitioners filed a petition to confirm arbitration in this Court on February 19, 2021. ECF No. 2. The petitioners served the Petition on the respondent on March 13, 2021 and filed proof of service on March 31, 2021. ECF No. 11. The

4

respondent did not respond to the Petition, and the petitioners received a Clerk's Certificate of Default against the respondent on April 28, 2021. ECF No. 17. This Court entered an Order to Show Cause why a default judgment should not be entered on May 24, 2021, ordering the respondent to respond to the Order by June 14, 2021. ECF No. 23. The respondent has not appeared or otherwise responded to the Petition or the Order to Show Cause.

II.

The Court has subject matter jurisdiction over the dispute pursuant to Chapter 2 of the FAA. 9 U.S.C. §§ 201-208. The petitioners originally cited Chapter 1 of the FAA and diversity jurisdiction as bases for federal jurisdiction. The petitioners were incorrect on both assertions. Nevertheless, the Court has federal question jurisdiction over the dispute because it is governed by Chapter 2 of the FAA. "Chapter 2 [of the FAA] grants federal courts jurisdiction over actions governed by the [New York] Convention, [and] establishes venue for such actions."[1] GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC, 140 S. Ct. 1637, 1644 (2020). Pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, commonly known as the New York Convention, and Chapter 2 of the FAA, federal courts have

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, emphasis, omissions, citations, and internal quotation marks in quoted text.

5

subject matter jurisdiction to confirm awards from commercial arbitrations involving property located abroad or commercial arbitrations involving at least one alien. 9 U.S.C. § 202. This case is about an arbitral award based on a commercial arbitration involving at least one alien and involving property located abroad.[2] Therefore, this Court has federal question jurisdiction. See id. § 203.

III.

The respondent has failed to respond to the Petition at issue. However, the Court must do more than simply issue a default judgment in favor of the petitioners. The Second Circuit Court of Appeals has explained that a default judgment is generally inappropriate in a proceeding to confirm or vacate an arbitration award because "[a] motion to confirm or vacate an [arbitration] award is generally accompanied by a record . . . [and] the petition and accompanying record should [be] treated as akin to a motion for summary judgment based on the movant's

---

[2] The respondent argued in the arbitration that the underlying dispute was not "commercial" because it was an employment dispute. Chapter 2 of the FAA extends to arbitration agreements or arbitral awards arising out of legal relationships that are "considered as commercial." 9 U.S.C. § 202. Employment contracts, except for those involving transportation workers, evidencing a transaction involving commerce are covered by the FAA. Cir. City Stores, Inc. v. Adams, 532 U.S. 105, 113 (2001); see also Rogers v. Royal Caribbean Cruise Line, 547 F.3d 1148, 1154 (9th Cir. 2008) (employment dispute covered by the New York Convention). In this case, the underlying employment agreement described obligations regarding the operation of a mine, which is commercial in nature. Therefore, the arbitration at issue in this case is covered by the New York Convention.

6

submissions." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 109 (2d Cir. 2006).

The standard for granting summary judgment is well established. "The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Darnell v. Pineiro, 849 F.3d 17, 22 (2d Cir. 2017). The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also N.Y.C. Dist. Council of Carpenters v. Reilly Partitions, Inc., No. 18-cv-1211, 2018 WL 2417849, at *2 (S.D.N.Y. May 29, 2018).

Where, as in this case, "an arbitral award falling under the [New York] Convention is made," any party to the arbitration may apply to any court with jurisdiction for an order confirming the award. 9 U.S.C. § 207. In such case, "[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in [Article V of the New York] Convention." Id. Article V of the New York Convention generally "provides the exclusive

7

grounds for refusing confirmation under the Convention." <u>Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.</u>, 126 F.3d 15, 20 (2d Cir. 1997). Article V of the New York Convention provides that a court may refuse to enforce an arbitral award where:

> (a) The parties to the agreement ... were ... under some incapacity, or the said agreement is not valid under the law ...; or
> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings ...; or
> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration ...; or
> (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties ...; or
> (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

<u>Id.</u> at 19. "Enforcement may also be refused if the subject matter of the difference is not capable of settlement by arbitration, or if recognition or enforcement of the award would be contrary to the public policy of the country in which enforcement or recognition is sought." <u>Id.</u> The Second Circuit Court of Appeals has held that Chapter 1 of the FAA and all of its grounds, express and implied, for modification and vacatur apply under the Convention where, as in this case, the award was rendered in the United States or pursuant to United States law. <u>Id.</u> at 18, 23; <u>see also</u> <u>Ecopetrol S.A. v. Offshore Expl. & Prod. LLC</u>, 46 F. Supp. 3d 327, 340 n.6 (S.D.N.Y. 2014).

8

Pursuant to Chapter 1 of the FAA, a district court's role in reviewing an arbitration award is extremely limited. British Ins. Co. v. Water St. Ins. Co., 93 F. Supp. 2d 506, 514 (S.D.N.Y. 2000); see also Tully Constr. Co. v. Canam Steel Corp., 684 F. App'x 24, 26 (2d Cir. 2017) ("[C]ourts play only a limited role when asked to review the decision of an arbitrator" and only "a very narrow set of circumstances delineated by statute and case law permit vacatur."). "Arbitration awards are not reviewed for errors made in law or fact." Id. Arbitral awards may only be vacated on extremely limited grounds. See, e.g., Hall St. Assoc's, LLC v. Mattel, Inc., 552 U.S. 576, 588 (2008); see Holdings, Inc. v. Jiffy Int'l AS, 5 F. Supp. 3d 565, 585-86 (S.D.N.Y. 2014); see also Ecopetrol S.A., 46 F. Supp. 3d at 340. Chapter 1 of the FAA permits a district court to vacate an arbitration award on four grounds:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a); see also Jock v. Sterling Jewelers Inc., 646 F.3d 113, 121 (2d Cir. 2011); Stolt-Nielsen SA v. AnimalFeeds

9

Int'l Corp., 548 F.3d 85, 90-91 (2d Cir. 2008), rev'd on other grounds, 559 U.S. 662 (2010); McQueen-Starling v. UnitedHealth Grp., Inc., 654 F. Supp. 2d 154, 161 (S.D.N.Y. 2009). The arbitration award may also be vacated under the FAA if it exhibited a "manifest disregard" of the law. Stolt-Nielsen, 548 F.3d at 94.

IV.

In this case, none of the reasons to vacate an arbitration award provided by the New York Convention, the FAA, or the Court of Appeals for the Second Circuit apply. The arbitrator found that the underlying claims at issue were committed to arbitration, Award ¶ 56; that pursuant to the 2017 Agreement, the respondent must repay the petitioners $118,811.05 for the advance he received because the venture was never profitable, which was a condition precedent to payment, Award ¶ 67; that the petitioners are entitled to $120,000 in damages because the respondent purchased industrial dryers without first getting approval of the petitioners, Award ¶ 74; that the respondent must repay $110,000 to petitioners because the respondent did not get prior approval to borrow those funds from a third party, Award ¶ 79; that the respondent is liable for $2,771 in interest on a loan obtained from a different third party without the petitioners' approval, Award ¶ 80; that respondent is liable for the petitioners' legal fees in the amount of $3,020 from past

10

litigation, Award ¶ 82; that the respondent must return all relevant records to the petitioners, Award ¶ 83; that the petitioners are not entitled to exemplary damages for deceitful behavior, Award ¶ 84; and that the respondent must pay for the arbitration fees, Award ¶ 86.

These findings and conclusions were reached after a preliminary hearing, interim orders, discovery rulings, written submissions and an evidentiary hearing. A careful review of the undisputed record provides no evidence that the award was the product of corruption, fraud, or misconduct. The record shows that the arbitrator did not exceed his powers, and that the award was not "rendered in manifest disregard of the law or the terms of the parties relevant agreements." See Tully Constr. Co., 684 F. App'x at 26; see also 9 U.S.C. § 10(a). Moreover, there is no evidence that the parties to the agreement were under some incapacity. The Award shows that the respondent was given proper notice of the arbitration in which he participated and of this case, the Award is within the scope of the arbitration provision and the parties' submissions to the arbitrator, the arbitral procedure was in accordance with the 2017 Agreement, the Award has not been set aside by another court, and the Award is not contrary to public policy. See Yusuf Ahmed Alghanim & Sons, Inc., 126 F.3d at 19.

Accordingly, the petitioners are entitled to judgment confirming the arbitral award.

## CONCLUSION

For the reasons explained above, the petition to confirm the arbitration award is **GRANTED** and the underlying arbitration award is ordered confirmed.

The Clerk is directed to enter Judgment confirming the Award, dated December 11, 2020, attached as Exhibit A to the Petition, and to enter Judgment in favor of the petitioners and against the respondent, awarding petitioners $354,602.05 in damages and $61,312.50 in arbitration fees, enjoining the respondent from bringing any judicial proceeding against the petitioners concerning the underlying dispute, and requiring the respondent to furnish the petitioners with all documents in the respondent's possession that relate to the petitioners that the respondent obtained or created in the course of his duties owed to the petitioners. The Clerk is directed to enter Judgment accordingly and to close this case.

**SO ORDERED.**

**Dated:** New York, New York
July 6, 2021

_____
John G. Koeltl
United States District Judge